UNITED STATES of America ex rel. Daniel M. ZEMBOWSKI, Petitioner,

v.

Richard DE ROBERTIS, et al., Respondents.

No. 83 C 6567.

United States District Court, N.D. Illinois, E.D.

Dec. 3, 1984.

James A. Clark, Schiff, Hardin & Waite, Chicago, Ill., for petitioner.

Neil F. Hartigan, Atty. Gen., James E. Fitzgerald, Asst. Atty. Gen., Chicago, Ill., for respondents.

## MEMORANDUM ORDER

PRENTICE H. MARSHALL, District Judge:

Petitioner, Daniel M. Zembowski, collaterally challenges his Illinois conviction of armed robbery by way of a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254. Petitioner has moved for summary judgment. The motion is supported by the state court record, affidavits, depositions and official or business records made contemporaneous with the petitioner's state court prosecution. Pursuant to our local Rule 12(e), petitioner has submitted a statement of material facts as to which there is no genuine issue and which entitle petitioner to judgment as a matter of law. Finally, petitioner has submitted a comprehensive and articulate brief in support of his summary judgment position.

Respondents have scarcely responded to the motion. They have not filed a response under local Rule 12(f) challenging petitioner's statement of facts as to which there is no genuine issue. They have not submitted any countervailing evidentiary materials. Their responsive brief is a bare four pages of apologia.

Petitioner's motion for summary judgment is granted and the writ is issued for the reasons hereinafter stated.

On April 16, 1979, petitioner was charged by information filed in the Circuit Court for Lake County, Illinois with armed robbery. Also charged in the same information was Frank W. Kiel, petitioner's cousin. A second information containing the same charge was filed against Deborah Thomas, an acquaintance of petitioner and Kiel. Both informations alleged the robbery of Society Jewelers, a retail jewelry store in Deerfield, Illinois, on January 4, 1979. Both cases were assigned to the same judge of the circuit court.

At the preliminary hearing and thereafter, all three defendants were represented by Julius L. Sherwin, their retained counsel, who had previously represented Kiel on other criminal charges.

At a hearing on June 11, 1979, assistant state's attorney Robert Fox moved that the two cases be joined. Sherwin opposed the motion stating, "There are certain defens-

es, there's a conflict, there are antagonistic defenses here which would be prejudicial to either one of the defendants by virtue of the fact that she's joined with the two male defendants, or the male defendants because they're joined with her." The court responded that, "Antagonistic defenses would require different attorneys, would they not?" Sherwin agreed, stating that he would "tend to [it] at that time." The court rejoined, "certainly, at that time. Then, you would point that fact out to the court so that someone here would have different counsel ... If that were the fact, then, that would be the court's responsibility to make certain."

The State filed a written motion for joinder, which was set for hearing on July 13. Sherwin responded in writing objecting upon the grounds of antagonistic defenses. At the hearing on the motion for joinder, Sherwin presented a motion to suppress the evidence of the photographic identification of Deborah Thomas, upon the ground that a photograph used in the identification had been obtained illegally. He suggested that the motion for joinder would be mooted if the motion to suppress were granted. Ruling on the motion for joinder was deferred, the court observing that if the motion to suppress were denied, "[The] question ... then will arise whether or not you can, if I consolidate these cases, represent ... all three of the defendants, which is not only your responsibility, but mine, as well." Sherwin responded, "I will concede to you now that if they're joined, they'll have to have other counsel, and arrangements will be made."

On July 27, following a hearing, the motion to suppress was denied. Sherwin thereupon renewed his opposition to consolidation contending that the defenses conflicted. Thus he argued, "Let's assume they were jointly indicted, I would be in here quite appropriately, and hopefully competently, to assert antagonistic defenses, and asking for severance. They [i.e., the State] are, in effect, asking for a joinder or consolidation. I submit it would be improper."

Nonetheless the court joined the cases. During the colloquy which ensued, assistant state's attorney Fox observed, "If counsel feels that there's possibly an antagonistic defense, I think he has only one choice. I think he has to withdraw. Then, there has to be shown antagonistic defenses. I see none."

Despite his repeated admissions that he could not represent all the defendants in a single trial, Sherwin never sought to withdraw, but continued to represent the co-defendants through the trial. And despite the court's acknowledgment that it had a "responsibility to make certain" that a single attorney could adequately represent the defendants in a joint trial, it failed to conduct an inquiry on that issue.

During the pretrial stages of the consolidated cases, assistant state's attorney Fox and Sherwin discussed possible plea bargains. During these negotiations Fox made an offer to Sherwin to immunize Deborah Thomas from prosecution in exchange for her testimony against Zembowski and Kiel. At this point Sherwin's conflict of interest became even more manifest. He simultaneously urged Thomas to accept the state's offer of immunity and continued to represent Zembowski against whose interest he was negotiating. Even assistant state's attorney Fox advised Sherwin at this point that Sherwin had a conflict of interest.

The State also offered to enter into a plea agreement in which Zembowski would receive the minimum sentence of six years in exchange for a guilty plea, and, despite a policy against negotiating with "career criminals," a similar offer was made with regard to Kiel who, because of his extensive prior criminal record, was classified a "career criminal."

Sherwin represented to Zembowski and Thomas and Kiel (as Sherwin himself stated on the record during the subsequent sentencing hearing) that the State's plea offers were a "package deal," all of whose parts had to be accepted in order to make the offer effective. According to Sherwin, Kiel and Zembowski were obligated to

plead guilty in order to free Deborah Thomas from criminal liability. However, assistant state's attorney Fox has testified in this proceeding that the plea offers were not, in fact, a package deal.

All three defendants were released on bail pending trial. Sometime near the end of 1979, Kiel fled. Because they believed the "package deal" to be withdrawn due to Kiel's absence, petitioner and Thomas felt compelled to persist in their pleas of not guilty and stand trial in January 1980.

The joint trial of petitioner and Deborah Thomas was held January 16–18, 1980. The State called as witnesses the proprietor of Society Jewelers, who identified petitioner; an employee, who identified Thomas; another employee who testified concerning the car used in the robbery and its license number; and several other witnesses. Each defendant testified in their own behalf. Petitioner testified that he was at the home of friends at the time of the robbery and his testimony was corroborated. He also testified that he had left his car in a parking lot following a blizzard on January 1, 1979, that it had been towed, that he had abandoned it because it was not in proper working condition and not worth the towing penalty. Thomas testified that she was at home with her child at the time of the robbery.

During his opening statement to the jury, Sherwin urged that the evidence would suggest that Kiel, the missing co-defendant, had taken petitioner's car or license plates and perpetrated the crime with two others. This assertion was renewed during Sherwin's closing argument although no evidence other than Zembowski's testimony that his car had disappeared supported it.

At the close of the State's case, Sherwin sought a directed verdict for each defendant. In presenting the motion in chambers, however, he argued only on behalf of defendant Thomas, and explicitly contrasted the evidence against the two co-defendants, conceding that the eyewitness identification of petitioner was strong in order to contrast the identification of Thomas, even though each defendant had been similarly identified. Sherwin concluded his argument with the patently duplicitous statement:

> But on the whole of the evidence thus far as to Debby Zembowski [sic Thomas] I respectfully urge and submit that there should be a direction of not guilty as to her.
>
> And in doing that, I add this—this is a personal observation—that if the judge dismisses her out and leaves Zembowski, the Jury will come to the conclusion that there must be something about it that makes Zembowski guilty or the Judge would have let him out. I'm offering you a suggestion where you can get the major malfactor.

This was not the only occasion on which Sherwin betrayed his loyalty to petitioner and rested it solely with Thomas, whose youth and gender evidently evoked his sympathy. Even at the preliminary hearing, when Sherwin first appeared on behalf of the co-defendants, he forcefully argued that probable cause was lacking as to Thomas but "wouldn't insult [his] Honor's intelligence by going into any [such] arguments on behalf of other defendants." Indeed, Sherwin in his affidavit has admitted that "At trial it was my strategy and plan that the judge or jury might acquit Thomas if either the judge or jury felt that Thomas had been led astray by Zembowski, who I considered to be the major malfactor." Thus it was Sherwin's deliberate strategy to benefit Thomas by persuading the court and jury that petitioner was not only guilty himself but also responsible for Thomas' involvement.[1]

Sherwin also made comparisons of this kind between petitioner and Thomas before the jury during the trial. Although his

---

1. Actions taken by counsel as a part of a "sound trial strategy" are not subject to Sixth Amendment challenge. *Strickland v. Washington,* — U.S. ——, 104 S.Ct. 2052, 2066, 80 L.Ed.2d 674 (1984). But of course such strategies do not include deliberate harm to one client for the benefit of another.

ostensible theory of defense was that neither defendant was involved in the crime, he drew comparisons between the conduct of the participants in the armed robbery that would reflect on the defendants should their alibis be disbelieved. For example, in cross-examining one witness about her testimony concerning her confinement in the back room of the jewelry store, Sherwin elicited testimony that the female was less culpable.

While the written record is incapable of capturing the tone of remarks and the demeanor of a speaker, this record reveals that Sherwin's bearing toward his two clients was not evenly balanced. He was kindly and paternal toward Thomas, calling her "Debbie" and emphasizing her dependence on her parents. By contrast toward petitioner he was sarcastic. Twice when petitioner attempted to clarify a matter on which he was confused, Sherwin publicly scorned him not to interfere because he "didn't have a license to practice law." In cross-examining a state witness concerning her identification of petitioner rather than challenging the basis of her recollection, Sherwin jokingly elicited testimony that she remembered the fact because he reminded her of Burt Reynolds, thereby denegrating his client and strengthening the witness' testimony.

His conduct of the trial was confused and rambling. In his closing argument Sherwin discussed *Miranda* warnings and a defendant's right not to testify, despite the fact neither issue was presented in the case.[2] He also repeated the incorrect argument earlier made in chambers that the eyewitness identification of petitioner was strong in contrast to that of Thomas.

The jury found both defendants guilty.

Sherwin's strategy to cast Thomas as a hapless victim led astray by the "major malfactor"—petitioner, Sherwin's other client—was most apparent at sentencing. Sherwin presented several arguments in mitigation on Thomas' behalf, including the fact that she had a three-year-old child, her father was alcoholic, and she was a first offender. In addition he argued that the State had once been willing to dismiss the charges against her, but misrepresented to the court that the State's offer was contingent on petitioner pleading guilty. Thus Sherwin urged, "I might indicate to you [the court] without prejudicing the State's case, that they were willing if the defendants Kiel and Zembowski pleaded guilty ... in a plea bargaining discussion to dismiss Deborah Thomas out of the case. She told me she was not involved, and I couldn't make that arrangement, and that was the position taken by Mr. Zembowski and Mr. Kiel."

Of course these remarks further emphasized Sherwin's strategy that petitioner was responsible for Thomas' predicament by suggesting that if petitioner had pleaded guilty Thomas would have gone free.

Sherwin made a final unsuccessful appeal to the state's attorney that the charge against Thomas be reduced to simple robbery in order to make probation an available sentence.

On petitioner's behalf, by contrast, Sherwin presented no mitigating evidence or argument. Petitioner had a wife and four young children who depended on him for support. He had a history of depression. He had no criminal convictions prior to the armed robbery.

The trial judge responded to Sherwin's suggestions which had permeated the trial that Thomas was less culpable than her co-defendant. Her sentence was mitigated because she had succumbed to evil influence. Correspondingly petitioner's sentence was increased because he was responsible both for his own conduct and Thomas'. Thus as to Thomas the court stated, "I sorrow for you, Mrs. Thomas, and as I said, I don't believe that you were the instigator of this crime. I do not see it in your background. I believe you were led by Daniel Zembowski. But ... our Legislature has declared that [your con-

2. The assistant state's attorney who tried the case recorded his incredulity at these remarks in his handwritten notes on Sherwin's closing argument.

duct] must require, at the minimum, a sentence of six years in the Department of Corrections, and it is my duty and obligation, ... to sentence you to at least that term."

As to petitioner, in contrast, the court stated, "There is nothing in your record to suggest that I ought to be lenient in your case ... Now, there's another aspect in this case that's disturbing to the court. I think your case is further aggravated by your involvement of Deborah Ann Thomas. I cannot believe that she instigated this offense, a 24-year-old woman with a 2- or 3-year old child[3] and I believe that you induced her to be an accomplice in your crime of violence and you are largely responsible for her situation today, and I think I must take this into consideration."

Deborah Thomas was sentenced to six years in custody, petitioner to 15 years.

As previously noted, Frank Kiel, the "career criminal," was not tried with petitioner and Thomas because he had fled the jurisdiction. He was later apprehended, returned to Lake County, and upon the advice of counsel other than Sherwin, pleaded guilty pursuant to a negotiated plea bargain. He was sentenced by the same judge to a term of 10 years to run concurrently with 3-year burglary sentence on unrelated matter. Kiel would have been eligible for parole in March 1984 had he not lost good time credits as a result of a fight with a fellow inmate. He was actually released from custody on July 9, 1984. Petitioner remains in custody.

Following her conviction, Deborah Thomas filed a petition for post-conviction relief charging that Sherwin's conflict of interest denied her effective assistance of counsel. She contended that once the State offered to immunize her in exchange for testimony against petitioner, a conflict of interest arose. At the hearing on the petition, the State did not challenge Thomas' new counsel's argument that Sherwin could not effectively represent either Thomas or petitioner. The petition was granted at the conclusion of the hearing. Thomas then entered a negotiated plea of guilty to a lesser charge in exchange for a two-year sentence with credit for time served. She was released from custody on January 29, 1981.

In contrast petitioner was unsuccessful in his state appeal and post-conviction petition in which he charged that Sherwin's conflict of interest in representing two defendants denied him the effective assistance of counsel guaranteed by the Sixth Amendment to the United States Constitution. *People v. Zembowski*, 94 Ill.App.3d 1204, 53 Ill.Dec. 813, 424 N.E.2d 448 (2d Dist.1981), *pet. for leave to appeal denied*, No. 55030 (Ill.Sup.Ct. Oct. 19, 1981). Having exhausted all available state remedies (which respondents do not dispute), Zembowski filed the instant petition in this court pursuant to 28 U.S.C. § 2254.

The foregoing facts demonstrate that petitioner was more than ineffectively represented. His counsel worked *against* petitioner's interests. But counsel's professional misconduct is not the only factor that leads to the inescapable conclusion that the writ of habeas corpus must issue. The state trial court's failure to investigate the basis of the asserted conflict also calls for relief.

■ The right to counsel guaranteed by the sixth amendment embraces representation that is free from conflicts of interest. *Wood v. Georgia*, 450 U.S. 261, 271, 101 S.Ct. 1097, 1103, 67 L.Ed.2d 220 (1981); *Glasser v. United States*, 315 U.S. 60, 70, 62 S.Ct. 457, 464, 86 L.Ed. 680 (1942). Joint representation of co-defendants by a single attorney, while regrettably not per se improper, is particularly subject to sixth amendment challenge because of the likelihood that co-defendants' interests

---

**3.** Any inference drawn by the court about Thomas' degree of guilt based upon her gender was impermissible. *United States v. Maples*, 501 F.2d 985, 986–87 (4th Cir.1974) (sentence of male defendant vacated and remanded for re-sentencing when court stated as to female co-defendant that it would not sentence her to a term quite as long as appealing defendant because of her age and gender).

will diverge. *Holloway v. Arkansas,* 435 U.S. 475, 489–91, 98 S.Ct. 1173, 1181–90, 55 L.Ed.2d 426 (1978).

■ The Supreme Court has fashioned two separate tests for evaluating claims of conflict of interest arising from joint representation, depending upon whether the conflict issue was brought to the trial court's attention in a timely fashion. If the conflict issue was raised, and the trial court fails to investigate independently the basis for the claim and satisfy itself that counsel can adequately represent multiple defendants, "reversal is automatic" and does not depend upon a showing that a conflict actually existed. *Holloway v. Arkansas,* 435 U.S. at 488, 98 S.Ct. at 1180.

On the other hand, if the conflict issue is not raised in the trial court, but is raised only on direct or collateral review, reversal is warranted only on a showing "that an actual conflict of interest adversely affected [the] lawyer's performance." *Cuyler v. Sullivan,* 446 U.S. 335, 348, 100 S.Ct. 1708, 1718, 64 L.Ed.2d 333 (1980). "Actual conflict" means an actual divergence of interests on the part of the defendants, such that pursuing the interest of one would be antagonistic to the interest of the other. However, it is unnecessary under either *Holloway* or *Cuyler* to demonstrate that actual prejudice resulted from the joint representation, because prejudice is presumed. *Strickland v. Washington,* — U.S. —, 104 S.Ct. 2052, 2067, 80 L.Ed.2d 674 (1984); *Cuyler v. Sullivan,* 446 U.S. at 349–50, 100 S.Ct. at 1718–19; *Holloway v. Arkansas,* 435 U.S. at 487–89, 98 S.Ct. at 1180–81; *Glasser v. United States,* 315 U.S. at 75–76, 62 S.Ct. at 467–68.

The Seventh Circuit has discussed the differences between *Holloway* and *Cuyler* in several cases. Thus the court said in *Wilson v. Morris,* 724 F.2d 591, 593 (7th Cir.) (en banc), *cert. denied,* — U.S. —, 104 S.Ct. 2357, 80 L.Ed.2d 829 (1984),

A Constitutional violation occurs, and proof of an actual conflict is not required when a defendant's attorney objects to joint representation and the trial court overrules the objection without exploring the basis of the objection or the adequacy of the representation in the face of a potential conflict of interest.

*See also United States ex rel. Ballard v. Bengston,* 702 F.2d 656, 662 and n. 5 (7th Cir.1983) (per curiam); *Dently v. Lane,* 665 F.2d 113, 115–16 (7th Cir.1981), *appeal after remand* 712 F.2d 1172 (7th Cir.), *vacated* 720 F.2d 472 (7th Cir.1983).

■ Sherwin raised the conflict issue repeatedly before trial. On numerous occasions he advised the trial court that the defenses were antagonistic, and even though his claims may have lacked specificity, it was the duty of the court to inquire whether Sherwin could represent both defendants adequately. Indeed, the trial judge expressly and repeatedly acknowledged his duty of inquiry, stating to Sherwin that the responsibility of determining whether all defendants could be represented by Sherwin was "not only your responsibility, but mine, as well." At another point in the pretrial proceedings, when discussing the potential conflict of interest, the trial judge stated that it "would be the court's responsibility to make certain" that the co-defendants had different attorneys in the event of a conflict.

Even a non-specific indication that defenses may conflict should provoke an inquiry into the adequacy of representation, because the hazards of joint representation are so strong and the policy of avoiding these hazards so important. *See* A.B.A. Standards for Criminal Justice, Standard 4–3.5(b) (2d Ed.1980) (cautioning against all joint representation and urging prophylactic inquiries by the trial court in all cases of joint representation); Fed.R.Crim.P. 44(c) and Advisory Committee Notes (same).

Numerous cases have recognized that non-specific objections are sufficient to invoke *Holloway.* Indeed, in *Holloway* itself, the Court stated that although "defense counsel might have presented the requests for appointment of separate counsel more vigorously and in greater detail ... [he] was confronted with a risk of violating, by more disclosure, his duty of confidentiality to his clients." 435 U.S. at

485, 98 S.Ct. at 1179. Furthermore, and particularly apropos here, several courts have held that an objection to consolidation of cases for trial is sufficient to alert a trial judge to the need to investigate whether a conflict of interest exists. *Smith v. Anderson*, 689 F.2d 59, 64 and n. 4 (6th Cir. 1982); *United States ex rel. Vriner v. Hedrick*, 500 F.Supp. 977, 982–83 (C.D.Ill.1980).

It is clear from the record that Sherwin repeatedly stated prior to trial that his clients' interests conflicted. The trial court acknowledged its own obligations in assuring that representation was free from conflict. Regrettably, the trial court failed to investigate the basis for these statements and Sherwin's ability to represent the co-defendants effectively. The setting aside of petitioner's conviction is therefore mandated under *Holloway*.

But even if Sherwin had not brought the existence of a conflict to the trial court's attention in a timely manner, petitioner is entitled to habeas relief because an actual conflict of interest was manifest throughout the trial proceedings. For purposes of the *Cuyler* test, actual conflict exists "whenever one defendant stands to gain significantly by counsel adducing probative evidence or advancing plausible arguments that are damaging to the cause of a co-defendant whom counsel is also representing." *United States ex rel. Gray v. Director, Department of Corrections*, 721 F.2d 586, 596–97 (7th Cir.1983), *cert. denied*, — U.S. ——, 104 S.Ct. 1690, 80 L.Ed.2d 163 (1984), *quoting Foxworth v. Wainwright*, 516 F.2d 1072, 1076 (5th Cir. 1975).

An actual conflict of interest is all the more damaging when it consists, not of failure to take beneficial action that independent counsel might have chosen, but of positive actions that on their face are actually harmful to a defendant. In *United States ex rel. Williams v. Franzen*, 687 F.2d 944, 949–50 (7th Cir.1982), counsel representing several defendants put one defendant on the stand and elicited testimony that tended to inculpate the co-defendants while exculpating the witness. The Sev-

enth Circuit affirmed the grant of habeas relief because of counsel's blatant breach of loyalty to the co-defendants.

This kind of palpable conflict of interest permeated the present case. Petitioner's own counsel, Julius Sherwin, argued to the court that petitioner was the "major malefactor" who should bear primary responsibility for the crime. Sherwin also argued to the court for leniency on behalf of Deborah Thomas on the ground that she would not have been prosecuted at all if petitioner had pleaded guilty. These most glaring lapses of loyalty had their greatest measurable impact on sentencing, when the offending arguments were made to the court.

The trial and sentencing judge adopted the theory advanced by Sherwin that petitioner was the ringleader who led Thomas astray, and considered that theory to be an aggravating factor calling for a significantly increased sentence. By contrast, Kiel, who was sentenced by the same judge for the same crime but in the absence of a suggestion that he was responsible for Thomas' misconduct, received a 10-year sentence, to run concurrently with a separate burglary sentence, despite his comprehensive criminal record. In the unique circumstances of this case it is, therefore, possible to estimate the *minimum* amount of prejudice to petitioner resulting from Sherwin's conflict of interest at the sentencing stage, even apart from the effect of his divided loyalty during other stages of the case. Kiel has now been released from custody. Had petitioner received a sentence equivalent to Kiel's he would long ago have been released from prison.

But Sherwin was disloyal to petitioner before and during the trial. He contrasted the actions of the participants in the crime, to the disadvantage of petitioner. He falsely contrasted the strength of the evidence against the defendants, again to petitioner's disadvantage. And his general demeanor toward Thomas was supportive while he was antagonistic toward defendant. Indeed, although more difficult to measure, Sherwin's representation of his clients during plea negotiations, including

not only the odious fact that he was urging Thomas to accept the plea that obligated her to testify against Kiel and petitioner, but also Sherwin's statement to them that the State's plea negotiation offers were a "package deal" may have had the greatest impact of all. Had petitioner believed he was free to accept the State's plea offer and accepted it, he would have received only a six-year sentence, the statutory minimum, and would have been released long ago.

These estimates of the impact of Sherwin's conflict are, however, quite unnecessary to the question of the necessity for habeas relief. Once it is shown that an actual conflict existed, we should not speculate about the possible consequences.

> [I]n a case of joint representation of conflicting interests the evil ... is in what the advocate finds himself compelled to *refrain* from doing, not only at trial but also as to possible pretrial plea negotiations and in the sentencing process. It may be possible in some cases to identify from the record the prejudice resulting from an attorney's failure to undertake certain trial tasks, but even with a record of the sentencing hearing available it would be difficult to judge the impact of a conflict on the attorney's representation of a client. And to assess the impact of a conflict of interests on the attorney's options, tactics, and decisions in plea negotiations would be virtually impossible.

*Holloway,* 435 U.S. at 490–91, 98 S.Ct. at 1181–82 (emphasis in original). Accordingly it is unnecessary to demonstrate prejudice where a conflict of interest is shown. *Strickland v. Washington,* 104 S.Ct. at 2067.

While proof of prejudice is unnecessary, however, the prejudice to petitioner stemming from Sherwin's conflict of interest is palpable. The conflicting positions which Sherwin took at pretrial, and during the trial and sentencing and the trial judge's explicit adoption of Sherwin's suggestions that petitioner was responsible for Thomas' participation in the crime and the increased sentence which petitioner accordingly received render demonstrable that this case is an appropriate one for habeas relief.

Petitioner's motion for summary judgment is granted. Petitioner's conviction of the crime of armed robbery in the Circuit Court of Lake County, Illinois under docket No. 79 CF 10 on January 18, 1980 is set aside. Respondents are ordered to release petitioner from custody forthwith. Should respondents appeal from this order, petitioner will be granted bail pending appeal. Should respondents not afford petitioner a new trial within 120 days they will be barred from bringing petitioner to trial on the subject armed robbery charges.