724 P.2d 42

**STATE of Arizona, Appellee,**

v.

**Richard James SOLANO, Vickie Kay Solano, Appellants.**

**Nos. 1 CA–CR 8319, 1 CA–CR 8306.**

Court of Appeals of Arizona, Division 1, Department A.

Oct. 1, 1985.

*This case was decided by the Judges of Division Two as authorized by A.R.S. § 12–120(E) (Supp.

Robert K. Corbin, Atty. Gen. by William J. Schafer III, Chief Counsel, Crim. Div., Jack Roberts, Asst. Atty. Gen., Phoenix, for appellee.

DePrima, Anderson & Whitehead by Ross Anderson, Sheila Harmer, Phoenix, for appellants.

## OPINION

GRANT, Judge.

This is a consolidated appeal by Richard Solano and Vickie Hurst Solano of their convictions and sentences pursuant to plea agreements. On appeal they claim that their contingent plea bargains were illegal. We agree. Therefore we set aside their plea agreements, vacate the convictions and sentences and remand the cases for further proceedings.

On September 6, 1983, a search warrant was executed on a home and 1382 grams of

1984).

80% to 95% pure cocaine and 2 baggies of marijuana were confiscated. Three people, co-defendants Richard Solano, Vickie Hurst and Guy Shane Lindstrom, were arrested in the home.

After the arrest but before the indictment Solano and Hurst married. By indictment of March 22, 1984 a grand jury charged Vickie Hurst (now Mrs. Solano), Mr. Solano and Mr. Lindstrom each with one count of possession of a narcotic drug for sale with a value over $250, a class 2 felony, and one count of possession of marijuana, a class 6 felony. Prior to trial each of the defendants accepted negotiated plea agreements which were a "package-deal": each defendant's plea was made contingent upon the acceptance by the court of the pleas of the other two defendants.

Mr. Solano's plea agreement provided that he would plead guilty to possession of a narcotic drug, cocaine, for sale with a value of over $250, a class 2 felony. It further stipulated that he would serve the minimum 5¼ year term and would not be eligible for parole or probation for ⅔ of the term imposed by the court, but in any event not less than 5 years. Mr. Solano's plea was made contingent upon the acceptance by the court of the pleas for Mrs. Solano and Mr. Lindstrom.

Mrs. Solano entered an Alford plea to possession of a narcotic drug, cocaine, a class 4 felony. *See North Carolina v. Alford,* 400 U.S. 25, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Her plea agreement stipulated that she would be sentenced for the maximum term of 5 years in prison. Under the crime to which she pled guilty probation would have been available· were it not for the stipulated sentence. Mrs. Solano's plea was made contingent upon the acceptance by the court of the pleas for Mr. Solano and Mr. Lindstrom.

Pleas were entered in accordance with the plea bargains. The court deferred acceptance of the pleas until sentencing. At the hearing for sentencing and acceptance of the pleas the trial judge expressed concern regarding the stipulated sentence in the lesser cases of Mrs. Solano and Mr. Lindstrom:

THE COURT: Have you all had a chance to review the presentence report and notice that the presentence officer disagrees rather substantially with the stipulated sentence in the lesser two cases?

MR. [CHARLES] DONOFRIO [III], [Deputy County Attorney]: Yes, Your Honor.

THE COURT: I will tell you that that concerns me because the investigator here seems to feel that the participation of these two defendants, Lindstrom and Mrs. Solano, is so minimal that five year prison time is not justified.

MR. DONOFRIO: Your Honor, that's not the state's position.

THE COURT: Well, I understand.

The deputy county attorney advocated that the trial judge sentence the defendants in accordance with the plea agreements while the defense urged the trial judge to persuade the prosecution to be lenient on Mrs. Solano and Mr. Lindstrom. The trial judge responded to their argument in the following way:

THE COURT: Well, I think the distortion comes from the fact that what the Code really requires is that these people go to trial, the jury decide, and then if they're guilty, that they go to prison for long flat time.

So, what we're doing is disregarding the Code and doing an informal sentencing by juggling. What the Code does is just give the power in the system to the prosecution. I don't know if it contemplates that. I don't think that the Legislature was contemplating anything except that there would be regular jury trials and people go off to prison for extremely long times which are far beyond the sense of fairness in most of us who work in the system.

Therefore, then, we have these plea bargains in which the sentencing is done by the prosecution.

MR. ANDERSON: We're not asking that Mr. Donofrio change anything. All

we're saying is that we just would like you to manage Vickie Hurst. That's all.

MR. KARASEK: And Shane Lindstrom.

THE COURT: I'm powerless.

Okay. Let us proceed.

Thereafter the trial judge proceeded to accept all pleas and sentence all three co-defendants according to the stipulated sentences in their respective plea agreements.

## "PACKAGE–DEAL" PLEA BARGAINS

In consolidated appeals the Solanos argue that the contingent provision of their plea agreements was contrary to rule 17.-4(d), Arizona Rules of Criminal Procedure, and thus illegal. They contend that by making all three co-defendants' plea agreements contingent upon all being accepted by the court, the prosecutor frustrated the court from exercising its duty under rule 17.4(d) to reject a negotiated plea agreement at the time of sentencing because of inappropriateness of stipulated sentencing provisions as revealed by the pre-sentence investigation and report.

Rule 17.4(d) states:

**Acceptance of Plea.** After making such determinations, the court shall either accept or reject the tendered negotiated plea. The court shall not be bound by any provision in the plea agreement regarding the sentence or the term and conditions of probation to be imposed, if, after accepting the agreement and reviewing a presentence report, it rejects the provisions as inappropriate.

The Solanos argue that the trial court has a duty to review each presentence report and make an independent judgment as to the appropriateness of each plea agreement with respect to sentencing.[1] In response the state advocates that the "package-deal" plea bargain was not improper because the trial court had the option of rejecting any or all of the plea agreements and did not do so.

The court has a duty to determine that each defendant entering a plea wishes to forego certain constitutional rights and is pleading voluntarily. The Arizona State Bar Committee on Criminal Law, and the Supreme Court's Advisory Committee on Criminal Rules which proposed the Rules of Criminal Procedure for Arizona in 1972 considered that trial judges had the following obligations in this regard:

1. Protecting an innocent defendant from being convicted of offenses which he did not commit;

2. Protecting a defendant guilty of some wrongdoing from being convicted of a crime more serious than his actions justify;

3. Protecting the judicial system from the loss of respect and trust which such mistakes would engender;

4. Protecting the defendant from making an unintelligent plea; and

5. Promoting finality of judicial determinations.

Arizona Proposed Rules of Criminal Procedure, July 15, 1972, comment, rule 20.3 [now rule 17.3] Arizona Rules of Criminal Procedure.

We conclude that "package-deal" plea bargains involving multiple defendants are improper under rule 17.4 and related case law. Rule 17.4(d) requires the trial court to reject an inappropriate plea agreement provision regarding the sentence. The Arizona Supreme Court in *State v. Superior Court*, 125 Ariz. 575, 611 P.2d 928 (1980) stated that under rule 17.4(d) and (e) the trial court must review the plea agreement to see if the ends of justice and the protection of the public are being served by the agreement. Furthermore that opinion states that according to rule 17.4(d) and (e) if any provision of the plea agreement is rejected by the court then the court must reject the entire plea.

Thus if any provision in any plea agreement which is part of a "package-deal" is inappropriate then the entire package of

---

**1.** The Solanos also contend that the contingent plea agreements frustrated the court's duty to sentence under A.R.S. § 13–603. However since we find that "package-deal" plea agreements are improper under rule 17.4 we do not reach this argument.

plea agreements must be rejected. This improperly places an impermissible burden on the exercise of the court's duties under rule 17.4 to review each plea agreement to see if the ends of justice and the protection of the public are being served, to reject any inappropriate sentence provision, to either accept or reject each plea individually, and to give each defendant an opportunity to withdraw his or her plea if the plea agreement or any provision of it is rejected by the court. This "package-deal" plea bargain prevents the court's fulfillment of its rule 17.4 duties to each individual defendant.

We also find "package-deal" plea bargains unacceptable on public policy grounds. Plea bargaining was formally recognized by the United States Supreme Court in *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970). The Arizona Supreme Court in *State v. Superior Court* noted that the Arizona Rules of Criminal Procedure recognize that properly negotiated plea agreements are an essential part of the criminal process and can enhance judicial economy, protect resources of the state and serve the ends of justice for the defendant, state and victim. This view is shared by Chief Justice Burger, speaking for the Court, in *Santobello v. New York,* 404 U.S. 257, 92 S.Ct. 495, 30 L.Ed.2d 427 (1971). However there also exists a great deal of criticism of the plea bargaining system. *See* Alschuler, *Implementing the Criminal Defendant's Right to Trial: Alternatives to the Plea Bargaining System,* 50 U.Chi.L.Rev. 931 (1983); van den Haag, *Limiting Plea Bargaining and Prosecutorial Discretion,* 15 Cum.L.Rev. 1 (1984–85); Fixsen, *Plea Bargaining: The New Hampshire Ban,* 9 New Eng.J. on Crim. & Civ.Confinement, 387 (Summ.1983).

At the hearing for acceptance of pleas and sentencing the trial judge in the present case expressed criticism of the plea bargaining system as it has come to exist in Arizona:

THE COURT: I understand the situation we're all in. The Legislature is hostile to the judiciary and feels that it's unleashing violence back into society. The Legislature, I'm not sure whether they understand what they have done with its judiciary is merely shift the power from the Judge to the prosecution where the decisions are basically invisible and not subject to the case by case or person to person basis, but that's a decision they have made.

While we recognize the legitimacy and necessity of plea bargains, we believe that "package-deal" plea bargains of the nature presently before us aggravate the disadvantages of the plea bargaining system to an unacceptable degree. Individual consideration and determination of a defendant's case is too greatly impeded when one defendant's plea agreement is inextricably tied to the plea agreements of others. Furthermore when family members or spouses are involved the coercion of one in exchange for leniency to another thwarts the required voluntariness of the plea. *Cf. Mone v. Robinson,* 430 F.Supp. 481 (D.Conn.1977).

This situation is analogous to *State v. Ethington,* 121 Ariz. 572, 592 P.2d 768 (1979) where the Arizona Supreme Court held that public policy forbids a prosecutor from insulating the state's position from review by bargaining away a defendant's appeal right. Plea bargaining should not take place in a "secretive" fashion concealed behind a defendant's sworn statement that he has not received any promises in exchange for his plea. Similarly, here public policy forbids a prosecutor from prohibiting the court's independent consideration and determination of each defendant's case by linking that individual's plea bargain to the plea bargains of others.[2] Each

---

**2.** The right to effective assistance of counsel is yet another possible ground for rejecting "package-deal" plea agreements. Some courts have held that under the facts of their particular case the "package-deal" plea agreement involved violated the defendant's right to effective assistance of counsel. *See United States ex rel. Zembowski v. De Robertis,* 598 F.Supp. 914 (N.D.Ill.1984); *Bishop v. Parratt,* 509 F.Supp. 1140 (D.Neb.

plea bargain must stand or fall on its own in an open forum where it is subject to the scrutiny of the court, to the concern of the public, and to the full understanding of the defendant. The acceptance of a plea agreement entered into by a defendant, like the sentencing of that defendant, can never be a perfunctory chore. *State v. Holstun,* 139 Ariz. 196, 677 P.2d 1304 (App.1983).

We next address the appropriate disposition of this case given the impropriety and unacceptability of "package-deal" plea bargains. The Solanos advocate that their sentences should be remanded for the sentencing judge to determine their sentences without the detrimental effect of the conditional acceptance of the plea on all co-defendants.

In response the state argues that the court of appeals does not have the power to allow modification of a sentence specifically agreed upon by the parties in a plea bargain without simultaneously allowing the state, which reserved the right to withdraw from the plea bargain in case of rejection of any provision, the opportunity to withdraw from the plea and reinstate the original charges. As authority the state cites rule 17.4(a), Arizona Rules of Criminal Procedure, which provides: "The court shall not participate in any such [plea] negotiation."

■ There is no authority for the trial court to impose a sentence contrary to that stipulated in the plea agreement. Rule 17.-4; *State v. Superior Court.* Any attempted sentence contrary to the plea agreement provision would trigger either party's right to withdraw from the agreement. *Id.* Therefore we do not remand the Solanos' sentences for the sentencing judge to determine their sentences without the contingent provision. Rather, since the Solanos' "package-deal" plea bargains are improper, we set aside their pleas, vacate their con-

victions and sentences and remand their cases for further proceedings in accordance with this opinion.

GREER, J., concurs.

BROOKS, Judge, dissenting.

The majority holds that "package-deal" plea agreements must be rejected as being contrary to both law and public policy. I respectfully disagree.

It requires no citation of authority to state that such agreements are far from unique, and not a single case has been cited wherein such an agreement has been declared to be illegal *per se.* To the contrary, "package-deals" have long been a valuable and accepted tool to prosecutors who often have a need for all defendants, or none, to plead guilty. Prosecutors have a legitimate interest in avoiding the time, delay and expense of multiple trials or of a single trial of multiple defendants. More importantly, without the availability of a "package-deal", a prosecutor is placed in a difficult position should one defendant plead and another go to trial since the defendant who pleads may thereafter become an adverse witness on behalf of his co-defendant, free of jeopardy.

Contrary to the conclusion of the majority, the prosecutor in the instant case did not "[p]rohibit the court's independent consideration and determination of each defendant's case." To place the "blame" on the prosecutor is to ignore the fact that the agreements are bilateral in nature and presumably contain provisions which are of benefit to all parties as well as promoting judicial economy. In this regard, in the absence of the plea agreements, appellants faced prison terms in excess of 14 years.

If the "package-deal" was offensive to the trial judge in this case, it was within his

1981); *In re Ibarra,* 34 Cal.3d 277, 193 Cal.Rptr. 538, 666 P.2d 980 (1983).

In the present case the Solanos do not raise the effective assistance of counsel issue. However we note that their counsel on appeal is the same counsel as in the trial court. *See also* American Bar Association, *Model Rules of Professional*

*Conduct,* rule 1.7 (1983); ABA *Standards Relating to Pleas of Guilty* §§ 2.1(a)(ii)(1) and (4) and §§ 3.1 and 3.3 (approved draft, 1968); Rules of the Supreme Court of Arizona, rules 41(a), 42 (1985), Arizona Rules of Professional Conduct, ER 1.7 (1985).

power to reject it. His "hands were tied" only in the sense that he was not free to renegotiate the agreements for the parties. Right or wrong, this is one of the foundations of the plea bargaining process.

The record fully supports the unchallenged findings of the trial court that appellants entered into the plea agreements knowingly, voluntarily and intelligently and with a full appreciation of the constitutional rights which were waived thereby. The record also supports the trial court's findings of a factual basis for the crimes charged, and these findings also stand unchallenged on appeal.

It simply appears that once appellants had the opportunity to review the presentence report, wherein the probation officer recommended a lighter sentence than that provided for in the plea agreements, they understandably suffered from an attack of "buyer's remorse" and sought to enforce those provisions which were to their benefit but attempted to avoid those conditions which were to their disadvantage. This is the untenable position which appellants have continued to maintain on appeal. In fact, the final result reached by the majority is contrary to that sought by appellants. They have not requested that the plea agreements be set aside, as has now been done, but only seek to be sentenced without the undesirable conditions. The majority properly concedes that this court is without authority to mandate the requested relief, but then responds by voiding the agreements in their entirety, a result which appellants have neither requested nor apparently desire. Indeed, it is conceivable that they may ultimately regret having filed this appeal in the first instance.

With regard to the majority's disenchantment with the prosecutorial discretion in this case, and its concern with certain aspects of plea bargaining in general, I readily recognize that prosecutors possess almost unlimited discretion and that they have emerged as the most powerful figures in the criminal justice system. The advisability of this state of affairs may well be subject to question, but it does not permit

the result reached by the majority in this appeal.

I would affirm the judgments and sentences of the trial court.