733 P.2d 279

**STATE of Arizona, Appellee,**

v.

**Robert Lopez JARAMILLO, Appellant.**

**Nos. 6287 and CR–86–0061–PC.**

Supreme Court of Arizona.

Feb. 17, 1987.

Robert K. Corbin, Atty. Gen., William J. Schafer III, Chief Counsel, Criminal Div., Greg A. McCarthy, Asst. Atty. Gen., Phoenix, for appellee.

Hirsch & Saltsman by Gordon K. Clevenger, Apache Junction, for appellant.

GORDON, Chief Justice.

Robert Lopez Jaramillo (defendant), Lino Flores, and Pete Moreno were charged with the first-degree murder of and deadly assault by a prisoner on a fellow inmate at the Arizona State Prison on January 3, 1984. Pursuant to separate but identical plea agreements, all three individuals pled guilty to first-degree murder and the state dropped the deadly assault charge. The trial judge imposed sentences of life imprisonment without possibility of parole for 25 years, with sentences to run consecutive to any sentences already being served.

Defendant filed a petition for post-conviction relief seeking to vacate his guilty plea. The trial court denied the defendant's requested relief after holding an evidentiary hearing. Defendant's motion for rehearing also was denied. We granted defendant's petition for review and have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3); A.R.S. §§ 13–4031, –4033, and .–4035; and Rules 31.19 and 32.9(c), 17 A.R.S. Rules of Crim.Proc.

I

In his petition for post-conviction relief, defendant gave two reasons for arguing that he did not voluntarily, knowingly, and intelligently enter his guilty plea. First, he alleged that he was under the influence of approximately fourteen benadryl tablets at

the change-of-plea proceeding. Second, he alleged that he was pressured into accepting the plea agreement because of what might happen if the matter went to trial. Flores and Moreno—based on their prior records—would almost certainly receive the death sentence if they were to be found guilty at trial, and the trial judge would be under psychological pressure to sentence defendant to death if Flores and Moreno received the death sentence because defendant actually stabbed the victim while Flores and Moreno only held the victim. Additionally, defendant alleged that his plea was improper per se because it was part of a "package deal" with Flores and Moreno.[1] He cited *State v. Solano*, 150 Ariz. 423, 724 P.2d 42 (App.1985), in which the court of appeals held that package-deal plea bargains offered to multiple defendants violate Rule 17.4, Arizona Rules of Criminal Procedure, and public policy. *Id.* at 425–26, 724 P.2d at 44–45. Defendant also proferred an ineffective-assistance-of-counsel argument based on his attorney's alleged refusal to honor defendant's request—made after the change-of-plea proceedings but prior to sentencing—to withdraw his guilty plea.

After holding an evidentiary hearing, the trial judge declined to vacate defendant's plea, concluding:

> The Court does not find that the facts of this case are similar to those in the Solano case....

The Court further finds that there was no undue pressure from the co-defendants which forced the Petitioner to accept the plea agreement. Further, that the Petitioner was not under the influence of drugs at the time of the change of plea or sentencing, and that there was nothing improper in the discussion by the Petitioner's lawyer about the psychological pressure that a judge would be under when deciding the sentence for the Petitioner if the two co-conspirators, because of their lengthier prior records received a death sentence, while the Petitioner had wielded the knife in the murder.

Minute Entry dated December 4, 1985.

Defendant thereafter filed a motion for rehearing limited to the applicability of the court of appeals' decision in *Solano*. The trial court denied defendant's motion. Defendant then filed an *Anders* brief and separately brought to our attention the fact that the court of appeals' decision in *Solano* was before us on review.

## II

■ This court recently vacated the court of appeals' *Solano* decision in *State v. Solano*, 150 Ariz. 398, 724 P.2d 17 (1986). There the court declined to invalidate all package-deal plea agreements as coercive per se and held that the trial court must conduct an inquiry into the totality of the circumstances to determine whether a plea

---

1. The record is unclear on whether the three plea agreements were part of a package deal. The plea agreements, although identical, did not state that acceptance of one agreement was contingent on acceptance of all three agreements. Also, each man was given an opportunity to withdraw his plea, and no statements made at the change-of-plea proceeding by either the trial judge, the prosecuting attorney, or the defendant, Flores, Moreno, or their counsel, suggest that defendant's plea was part of a package deal.

At the evidentiary hearing on post-conviction relief, the issue of whether the three individuals had entered into a package deal was raised repeatedly. Moreno's attorney testified: "It has been described by others as being a package deal. I personally do not remember it being such." When cross-examined, he said: "Again, I don't have any independent recollection of it being a package deal. Conversations with co-counsel and from reading the pleadings that you have filed indicate to me that it was." Flores' attorney could "not recall the plea offer being contingent upon all three accepting the plea agreement." Defendant testified that his attorney told him that his plea agreement was part of a package deal. When asked whether "it [was] your understanding that [the plea] was contingent upon everyone accepting it", defendant's attorney replied, "Yes." When asked whether "there was a requirement that all three plead or none plead", the deputy county attorney answered, "Yes. I anticipated it as a package agreement. I did not wish to try one of them without all of them." He later replied affirmatively when asked whether "the offer you eventually made to the defendants was a package deal."

We will assume without deciding that defendant's plea was part of a package deal.

was unduly coerced or voluntarily given.[2] When conducting its inquiry, the trial court should consider the following factors: 1) whether the prosecutor acted in good faith and the inducement to plead was proper; 2) whether there is a factual basis for the plea in terms of supportable evidence and proportionality of sentence; 3) whether the promise of leniency to a co-defendant significantly influenced the defendant's decision to plead guilty; and 4) whether any other relevant factor impermissibly influenced the defendant's decision to plead guilty. *Solano,* 150 Ariz. at 402, 724 P.2d at 21; *see State v. Tietjens,* 729 P.2d 914, 916 (1986).

We have reviewed the record with the above factors in mind and conclude that the defendant voluntarily accepted the package-deal plea agreement.[3]

### III

In his affidavit dated November 29, 1984, defendant alleged that after entering into the plea agreement, "I told my attorney that I wanted to withdraw my guilty plea.... My attorney told me that it was too late to withdraw my plea.... At the time of my sentencing, I again told my attorney that I wanted to withdraw my plea, but he told me that it was too late to do so." Defendant alleges that his attorney acted ineffectively by not forwarding defendant's request to withdraw his plea prior to sentencing.

This issue was explored at the evidentiary hearing, where the following colloquy occurred between defendant and his attorney:[4]

Q. Did you ever ask your attorney whether you could withdraw the plea?

A. Yeah.

Q. And where did that take place?

A. I think the day we came to sentencing. I'm not sure. I know I asked him.

Q. Okay. And what did Mr. Callahan say?

A. He said it was too late, that we had already signed it and the judge already approved it.

Q. Did you ask him whether there was any way possible to withdraw the deal, or did you just accept that explanation?

A. I just accepted it.

Transcript of evidentiary hearing, 50–51 (October 25, 1985). Attorney Callahan was also asked about defendant's request to withdraw the plea.

[State's Attorney]: After the plea had been entered, did Mr. Jaramillo want you to back out of the plea for him?

A. No. There was, if I remember correctly, questions that he asked me about what would happen if he withdrew from the plea agreement, but he never indicated to me that he wished to withdraw.

Q. Did you ever tell him that he could not withdraw from the plea agreement because the judge had already accepted it?

A. I believe, if I can report the conversation, he asked me at some point in time, and I don't honestly remember whether it was immediately before sentencing or immediately after, he asked me what would happen if he withdrew from the plea, and my response was that, 'They probably won't let you because it has already been accepted, but if you were allowed to withdraw from the plea, you would go to trial and most likely be convicted.' This was in the context of our previous discussions, where I had analyzed the evidence with him.

Q. I have no further questions of this witness.

\* \* \* \* \* \*

---

**2.** Although I dissented in *Solano* and would disallow the use of package deals, I apply the law as decided by a majority of my brethren.

**3.** We have reviewed the record and conclude that evidence sufficiently supports the trial court's findings that defendant did not enter his plea while under the influence of drugs and that defendant was not improperly pressured into

entering his plea because of what might happen if the matter went to trial.

**4.** Defendant's attorney at the change-of-plea and sentencing proceedings was Dwight P. Callahan. Defendant's attorney at the subsequent evidentiary hearing was Gordon Clevenger.

[Defense Attorney]: I believe you testified that after the change of plea Mr. Jaramillo asked you what would happen if he were to withdraw his plea?

A. I believe that that was either immediately before or immediately after sentencing.

Q. And your response was that he probably could not?

A. My response was that the judge probably would not let him because the plea agreement had been accepted, but that even if he were allowed to withdraw his plea, that he would be right back where he started and the case would be set for trial and that very likely he would be convicted.

Q. Did you tell him it was possible to make that attempt?

A. I didn't lead him to believe it was impossible, no.

Q. Did you lead him to believe that it could be done?

A. Well, after this discussion, you know, all he did was ask me the question of what would happen. He didn't say I'm thinking about doing it or I want to do it. His question was, 'What would happen if I did it,' and in context my feeling was that he was looking for some way of having a trial that would prevent him from being subjected to the death penalty, and that is why I gave the response I did, was that, you know, he wasn't going to gain anything by withdrawing from the plea.

Q. So you were getting the impression that he still wished to go to trial but his main concern was if he lost, he would get the death penalty?

A. No, I didn't feel—he didn't lead me to believe he wanted to go to trial. He didn't lead me to believe that he wanted to withdraw his plea. He asked me a question, what would happen. It struck me as being largely hypothetical and designed to determine whether there might be a procedural loophole of some type that would allow him to get what he wanted, which was, you know, to make sure there was no death penalty.

Q. Did he ever raise this with you again?

A. No.

*Id.* at 101–02, 110–11.

Although both parties raised the issue of ineffective assistance of counsel, the trial judge failed to express his opinion on the matter in his minute entry dated December 4, 1985. Assuming from defendant's affidavits and the above-quoted evidentiary proceedings that defendant actually requested his attorney to withdraw his plea, rather than merely asking a "what if" question, we must decide whether the attorney's subsequent failure to honor his client's request resulted in ineffective assistance of counsel.

The test for ineffective assistance of counsel is two-pronged: the defendant must prove that counsel's performance was deficient and that counsel's deficient performance prejudiced the defendant. *State v. Fisher*, 730 P.2d 825, 827 (1986). We need not address the prongs in any order, and the defendant must prove both elements to succeed on his claim. *State v. Salazar*, 146 Ariz. 540, 541, 707 P.2d 944, 945 (1985).

■ We will first examine the prejudice prong of the test. A defendant is prejudiced by his attorney's deficient performance if there exists a reasonable probability that, but for his attorney's unprofessional errors, results of the proceedings would have been different. *Fisher*, at 829. "Reasonable probability" is "less than 'more likely than not' but more than 'mere possibility.'" *Id.* To prove prejudice here, Jaramillo must prove that if his attorney had informed the trial judge that his client wished to withdraw his plea, it was more than "mere possibility" that the trial judge would have granted the request.

■ From our review of the record, we conclude that it is very unlikely, and certainly not more than merely possible, that the trial judge would have permitted the defendant to withdraw his plea at the time of sentencing. Defendant's three reasons for wanting to withdraw his plea—he was

under the influence of drugs at the change-of-plea proceeding, he was pressured into accepting the plea agreement because he was concerned that Flores and Moreno would receive the death sentence if the matter went to trial, and his plea was improper per se because it was part of a package deal—were all addressed and rejected by the trial judge. Also, the trial judge at the change-of-plea proceeding expressly warned all three men as follows:

THE COURT: All right. Gentlemen, just because you signed these documents does not require you to go ahead with this plea agreement. The purpose of this hearing is for you to decide whether or not you want to go ahead with the plea agreement and, if you decide you do not want to go ahead with it, it is not going to cause me a bit of problem. All that will happen will be that you will go to trial on the original charges. You can reject it at any time during this hearing and, like I say, that is what we are here having the hearing for, is for you to decide whether you want to go through with it.

*At the hearing, however, if you enter a plea of guilty, you are not going to be able to change your mind. So you had better make absolutely sure that is what you want to do before you enter any pleas of guilty in open Court.*

Did you understand what I stated, Mr. Jaramillo?

MR. JARAMILLO: Yes.

Transcript of change-of-plea proceeding, 6 (April 5, 1984) (emphasis added). Additionally, the trial judge asked at the sentencing proceeding whether defendant had anything to say before the sentence was imposed; defendant declined to make a statement.

Evidence is nonexistent as to why the trial judge would have granted defendant's request to withdraw his plea. Defendant's ineffective-assistance-of-counsel argument is meritless.

## IV

We have reviewed the record for fundamental error as mandated by A.R.S. § 13–4035. Having found none, we affirm the judgment and sentence of the trial court.

FELDMAN, V.C.J., and CAMERON and HOLOHAN, JJ., concur.

HAYS, J., participated in the determination of this matter but retired before this opinion was filed.