IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 15, 2001

## STATE OF TENNESSEE v. LARRY D. SIMMONS and TYCE RENARD JACKSON

**Direct Appeal from the Criminal Court for Montgomery County**
**No. 40183     John H. Gasaway, III, Judge**

---

**No. M1999-01388-CCA-R3-CD - Filed May 15, 2002**

---

The appellants, Tyce Jackson and Larry Simmons, were initially charged with delinquency in a juvenile petition filed in the Juvenile Court for Montgomery County. This petition arose out of two separate car jackings occurring in October of 1997. A hearing was held in the juvenile court upon the State's petition to transfer the appellants to criminal court for trial as adults. Finding that the appellants should be tried as adults, the juvenile court transferred the case to the Montgomery County Criminal Court.

The appellants appealed their transfer by way of a petition for the writ of certiorari filed in the criminal court. The criminal court denied the writ. The appellants were indicted on two counts of especially aggravated kidnapping, two counts of carjacking, two counts of aggravated robbery, two counts of illegal weapon possession and one count of aggravated assault. Both appellants ultimately entered guilty pleas in criminal court to one count of aggravated kidnapping and one count of aggravated assault. They each received concurrent sentences of ten and six years respectively. As part of the plea agreement the appellants reserved a certified question of law concerning the standard used by the juvenile court in transferring the appellants for trial as adults. The appellants claim that because proof at the transfer hearing showed them to be "voluntarily committable" to an institution for the developmentally disabled or mentally ill they were not subject to transfer for trial as adults. In addition, Appellant Simmons alleges that the evidence at the transfer hearing failed to adequately identify him as a perpetrator of the offenses.

We find that while Tennessee Code Annotated section 37-1-134(a)(4)(B) prohibits the transfer to criminal court of juveniles who are "involuntarily committable" to a mental health facility, no such prohibition exists with respect to juveniles whose mental disorders might make them subject to voluntary admission to a mental health facility. In addition, we find that Appellant Simmons has failed to present this Court with a record sufficient to permit review of the issue concerning his identity as a perpetrator of the offenses at issue in this appeal. The judgments, conviction and sentences are therefore affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court if Affirmed.**

JERRY L. SMITH, J., delivered the opinion of the court, in which JOHN EVERETT WILLIAMS and NORMA MCGEE OGLE, JJ., joined.

Collier W. Goodlett, Assistant Public Defender, Clarksville, Tennessee for appellant, Larry D. Simmons.

Stacy A. Turner, Clarksville, Tennessee, for appellant, Tyce Renard Jackson.

Paul G. Summers, Attorney General & Reporter; David H. Findley, Assistant Attorney General; John Carney, District Attorney General; Lance A. Baker, Assistant District Attorney General, for appellee, State of Tennessee.

## OPINION

Factual Background

The record provided by the appellants includes very little information concerning the actual offenses. From the indictments it appears that the charges against the appellants arose from two separate series of events occurring on October 7, 1997. In the first of these, appellants and two additional juvenile co-defendants allegedly victimized Percy Williams while stealing his automobile. All four of these individuals also allegedly committed similar acts against Demarcus Neblitt two days later.

Prior to the grand jury's returning the aforementioned indictments, the juvenile court conducted a transfer hearing on May 29[1], June 5[1], and June 9[1] of 1998.[1] On the later dates, numerous witnesses testified concerning the appellants' mental health. Three of these witnesses were Dr. Robert Niemi, a staff psychologist at Middle Tennessee Mental Health Center; Marciso Gaboy, a psychiatrist at the same facility; and Dr. Michael A. West, a psychologist in private practice. While their testimonies differed somewhat, these witnesses recounted numerous psychological problems from which Jackson and/or Simmons suffered.[2] Deficiencies in the record[3] make is unclear whether Drs. Niemi and Gaboy recommended additional in-patient treatment for Simmons, though they did make this recommendation for Jackson. Dr. West also indicated that

---

[1] Apparently the Montgomery County Circuit Court had deemed a prior transfer hearing conducted on October 22, 1997, invalid, and the hearing referenced above took place on remand.

[2] Among these were conduct disorder, substance abuse, depressant disorder, and impulse control disorder. Drs. Gaboy and West also indicated that Jackson was mentally ill under the guidelines of the DSM-4, the diagnostic manual used in the psychiatric field.

[3] Reports referenced throughout the doctors' testimonies were not included in the record.

Jackson should receive in-patient treatment.[4]  In addition, all three agreed that Jackson was not involuntarily committable, and Dr. Niemi averred that the same was true for Simmons.[5]  In doing so, Drs. Nieme and West explained that involuntary committals were inapplicable here because the respective defendants were not a danger to themselves or others at the time of their evaluations. Tenn. Code Ann. §§33-6-401 - 33-6-510.  After hearing this testimony, the juvenile court found that it would "not find [voluntary commitment] as being a commitment contemplated by [Tennessee Code Annotated section 37-1-134(a)(4)(B)]".  In other words, the juvenile court found that a juvenile suffering from a mental disorder that is insufficient to warrant "involuntary commitment" under Tennessee Code Annotated sections 33-6-401 and 33-6-510 could be transferred for trial as an adult under section 37-1-134(a)(4)(B).  The appellants' basic assertion on appeal is that section 37-1-134(a)(4)(B) prohibits the transfer of juveniles who are either "voluntarily" or "involuntarily" committable to a mental health facility to criminal court.

### Transfer of Juveniles to Criminal Court for Trial as an Adult

The transfer of juveniles charged with delinquency to criminal court is governed by Tennessee Code Annotated section 37-1-134.  That statute provides, in pertinent part:

> (a) After a petition has been filed alleging delinquency based on conduct which is designated a crime or public offense under the laws, including local ordinances, of this state, the court, before hearing the petition on the merits, may transfer the child to the sheriff of the county to be held according to law and to be dealt with as an adult in the criminal court of competent jurisdiction.  The disposition of the child shall be as if the child were an adult if;
>
> (1) The child was sixteen (16) years or more of age at the time of the alleged conduct, or the child was less than sixteen (16) years of age if such child was charged with the offense of first degree murder, second degree murder, rape, aggravated rape, aggravated robbery, especially aggravated robbery, kidnapping, especially aggravated kidnapping or an attempt to commit any such offenses.  The district attorney general may not seek, nor may any child transferred under the provisions of this section receive, a sentence of death for the offense for which the the child was transferred;

---

[4]Dr. West offered no opinion concerning Simmons since he did not evaluate Simmons.

[5]Again, Dr. Gaboy's opinion concerning the potential involuntary committal of Simmons is not clearly reflected by the record.  Furthermore, Dr. West did not offer an opinion on this subject since, as mentioned in the previous footnote, he did not examine Simmons.

(2) A hearing on whether the transfer should be made is held in conformity with §§ 37-1-124, 37-1-126, and 37-1-127;

(3) Reasonable notice in writing of the time, place and purpose of the hearing is given to the child and the child's parents, guardian or other custodian at least three (3) days prior to the hearing; and

(4) The court finds that there are reasonable grounds to believe that:
    (A) The child committed the delinquent act as alleged;
    (B) **The child is not committable to an institution for the developmentally disabled or mentally ill; and**
    (C) The interests of the community require that the child be put under legal restraint or discipline.

Tenn. Code Ann. § 37-1-134(a)(1), (2), (3), (4) (emphasis added).

The issue is this case therefore resolves itself into the question of whether the term "committable" in subsection (a)(4)(B) encompasses juveniles who are sufficiently mentally ill to seek voluntary admission to a mental health facility pursuant to Tennessee Code Annotated section 33-6-201 through 33-6-208, but who do not pose a substantial risk of harm to themselves or others so as to warrant "involuntary commitment" to an institution pursuant to Tennessee Code Annotated section 33-6-401 through 33-6-510.

<u>Voluntary Commitment or Admission</u>

Voluntary commitment or admission to a mental health facility is governed by Tennessee Code Annotated sections 33-6-201 through 33-6-208. Those statutes allow people who are suffering from a mental illness or serious emotional disturbance to apply for admission to a mental health facility for diagnosis, observation and treatment. Tenn. Code Ann. § 33-6-201. Under section 33-6-206, the parent, legal guardian, or custodian who voluntarily admits an individual may request at any time that the mental health facility discharge the individual unless the subject had become "involuntarily committed" and is not free to leave. Tenn. Code Ann. § 33-6-206, - 207.

<u>Involuntary Commitment</u>

Involuntary commitment is governed by Tennessee Code Annotated sections 33-6-401 through 33-6-510. Under this statutory scheme, a mentally ill individual who presents an "immediate substantial likelihood of serious harm" may be detained against his will in a mental health facility initially on the authority of a law enforcement officer or certain mental health professionals and ultimately by court order. Tenn. Code Ann. § 33-6-402, - 422.

<u>Statutory Construction</u>

"'The most basic principle of statutory construction is to ascertain and give effect to the legislative intent without unduly restricting or expanding a statute's coverage beyond its intended scope.'" <u>Carter v. State</u>, 952 S.W.2d 417, 419 (Tenn. 1997) (citations omitted). "Legislative intent and purpose is to be ascertained primarily from the natural and ordinary meaning of the language used, without a forced or subtle construction that would limit or extend the meaning of the language." <u>Id.</u> With this background the inquiry, therefore, becomes: What did the legislature mean when it used the term "committable?"

Webster's Third New International Dictionary defines "committable" as "capable of being committed: legally subject to being committed." Webster's Third New International Dictionary 457 (1993). Among the many listed definitions for "commit," the one seemingly most relevant to this situation states that the term means "to consign legally to a mental institution." <u>Id.</u> Finally, this publication in part defines "consign" as

> to give over to another's charge, custody, or care . . . to give, transfer, or deliver over by or as if by signing over esp[ecially] into the possession of another or into a lasting state: commit in a formal or solemn manner . . . to send or address to an agent in another place to be cared for.

<u>Id.</u> at 484.

Within the transfer statute itself, the legislature has provided:

> Any person, who was transferred under this section and who was less than sixteen (16) years of age at the time of the offense and who is subsequently convicted and <u>committed</u>, shall be housed in a juvenile correctional facility until such person reaches sixteen (16) years of age, at which time such person may be transferred upon the order of the <u>committing</u> court to an adult facility. Any person <u>committed</u> to an adult facility under this section shall be housed, separate and removed from adult inmates.

Tenn. Code Ann. § 37-1-134(j) (2001) (emphasis added). Furthermore, Tennessee Code Annotated section 37-1-137 deals with the "[c]ommitment of delinquent children to the department of children's services." <u>See</u> Tenn. Code Ann. § 37-1-137 (2001). For example, a portion of this statute speaks to "promulgat[ing] rules and regulations relative to commitment criteria for the incarceration of juvenile offenders in facilities operated or managed by the department." Tenn. Code Ann. § 37-1-137(a)(6) (2001). In explaining the general appeals process relative to juvenile court, the legislature provided: "An appeal does not suspend the order of the juvenile court, nor does it release the child from the custody of that court or of that person, institution or agency to whose care the child has been committed." Tenn. Code Ann. § 37-1-159(b) (2001). Additional sections within chapter 1 make references to commitments essentially stating or implying that such are not voluntary in nature. <u>See</u>, <u>e.g.</u>, Tenn. Code Ann. §§ 37-1-134(k), -166(a), -171, -175, -176(1), -179, -180, -203, -302, -304, -305, -308 (2001).

Turning from statutes dealing specifically with juvenile court concerns to those addressing mental health, the legislature admittedly does use the term "commitment" within one statute's caption when addressing the approval of continued hospitalization begun as a voluntary admission. See Tenn. Code Ann. § 33-6-205 (2001). However, this is the only such usage in all of chapter 6, part 2, entitled "Voluntary Admission to Inpatient Treatment." Part 4, dealing with "Non-emergency Involuntary Admission to Inpatient Treatment," most commonly makes reference to admitting and detaining an individual. See, e.g., Tenn. Code Ann. §§ 33-6-403(5), -410, -411(3), -412(3) (2001). Nevertheless, also within part 4, section 33-6-416 deals with providing an individual patient's representative the requisite notice of the patient's present "detention and the standards for possible future commitment," and the caption of Tennessee Code Annotated section 33-6-422 mentions "Involuntary commitment." Tenn. Code Ann. §§ 33-6-416, -422 (2001). Moreover, Part 5, governing "Non-emergency Involuntary Admission to Inpatient Treatment" frequently utilizes the term "commitment" or a variation thereof. One section sets out standards under which a "person may be judicially committed to involuntary care and treatment;" another provides additional requirements for the "judicial commit[ment]" of an individual who is less than sixteen years old; yet another speaks to "who may file [a] complaint for [such] commitment;" and numerous sections address appropriate "commitment" facilities. See Tenn. Code Ann. §§ 33-6-502 to -509 (2001).

From our reading of the above, we believe that the legislature intended in section 37-1-134(a)(4)(B) that only a juvenile subject to "involuntary commitment" may not be transferred to criminal court for trial as an adult. Indeed, it appears to us that use of the term "voluntary commitment" is an oxymoron and a misnomer when referring to the voluntary admission provisions of sections 33-6-201 through 33-6-208.

This belief is underscored by previous cases wherein courts have permitted transfers involving juveniles for whom evidence suggested that they were suffering from mild mental retardation, depression with psychotic features, bi-polar disorder, post-traumatic stress disorder, a treatable drug problem, etc. See, e.g., State v. Williams, 784 S.W.2d 660, 663 (Tenn. Crim. App. 1989); ; State v. Howell, 34 S.W.3d 484, 497 (Tenn. Crim. App. 2000); State v. Derrick Bryant, No. E2000-01835-CCA-MR3-CD, 2001 WL 1187916, at * 6 (Tenn. Crim. App. at Knoxville, October 9, 2001); State v. Howell, 34 S.W.3d 484, 497 (Tenn. Crim. App. 2000); State v. Joshua McDaniel, No. 03C01-9605-CC-00178, 1997 WL 304194, at *2 (Tenn. Crim. App. at Knoxville, June 5, 1997). Though the juvenile transfer statute has been amended over the years covered by the aforementioned cases, the language precluding transfer for a child found to be "committable to an institution for the . . . mentally ill" has not been altered by the state legislature in reaction to these results.

Furthermore, the State points to a long-ago transfer statute amendment from which the current language does not retreat as evidencing legislative intent on this matter. Formerly, to effectively transfer a juvenile's case to criminal court, the juvenile court must have found

> reasonable grounds to believe that (i) the child committed the delinquent act alleged; (ii) the child is not amenable to treatment or rehabilitation as a juvenile; (iii) the child is not committable to an institution for the mentally retarded or mentally ill; and (iv) the interests of the community require that the child be placed under legal restraint or discipline.

Tenn. Code Ann. § 37-234(a)(4) (Supp. 1975). However, in a 1976 amendment, the legislature removed subsection (ii) from the requirements to be met before transfer. See Tenn. Code Ann. § 37-234(a)(4) (Supp. 1976). In his law review article addressing changes in Tennessee family law at that time, Professor Neil Cohen remarked that "[t]his finding had often troubled Tennessee courts, for it was difficult to demonstrate that a child was *not* amenable to treatment." Neil P. Cohen, A Critical Survey of Developments in Tennessee Family Law in 1976-1977, 45 Tenn. L. Rev. 427, 475 n.254 (1978). Based on this information, the State reasonably asserts that "it seemed to be the [l]egislature's intent to limit a juvenile's ability to avoid adult consequences for criminal behavior."

We therefore hold that a juvenile court is precluded under Tennessee Code Annotated section 37-1-134(a)(4)(B) from transferring juveniles to criminal court when those juveniles are subject to the "involuntary commitment" procedures of part 4, chapter 6, title 33 of the Tennessee Code. Amenability to "voluntary admission" of the juvenile pursuant to part 2, chapter 6, title 33 does not prohibit a transfer of the juvenile to criminal court for trial as an adult. Because there is no proof in the record that either appellant in the instant case is subject to "involuntary commitment", section 37-1-134(a)(4)(B) does not prohibit the appellant's transfer to criminal court.

<u>Alleged Insufficient Identification of Appellant Simmons</u>

Finally, we turn to Simmons' allegation that the juvenile court erred in finding that he had been involved in the crimes. More specifically, Simmons alleged that since no one identified him in court, the State failed to prove that the he was the "Larry Simmons" referenced in testimony. However, Simmons did not provide us with a transcript of the testimony from the first day of the juvenile court transfer hearing, at which time it appears that the testimony surrounding the offenses took place. We are, therefore, left without an adequate record to review. The defendant bore the responsibility of including a complete record on appeal. See, e.g., State v. Troutman, 979 S.W.2d 271, 274 (Tenn. 1998). Failure to do so precludes our consideration of this matter. See Tenn. R. App. P. 24(b). This issue is without merit.

<u>CONCLUSION</u>

In view of the foregoing the judgment of convictions and sentences entered by the Montgomery County Criminal Court are affirmed.

———————————————————
JERRY L. SMITH, JUDGE