IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs June 19, 2018

## STATE OF TENNESSEE v. ANTONIO LAMONT BOOKER

**Appeal from the Criminal Court for Davidson County**
**No. 2010-B-1493     Mark J. Fishburn, Judge**

_____

### No. M2017-01467-CCA-R3-CD

_____

Antonio Lamont Booker, Defendant, appeals the trial court's denial of his motion to alter or amend the judgment revoking his probation and placing his sentence into effect. We conclude that the trial court did not abuse its discretion by denying the motion. We affirm the trial court's judgment.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which D. KELLY THOMAS, JR., and TIMOTHY L. EASTER, JJ., joined.

Michael L. Freeman, Nashville, Tennessee, for the appellant, Antonio Lamont Booker.

Herbert H. Slatery III, Attorney General and Reporter; Leslie E. Price, Senior Counsel; Glenn R. Funk, District Attorney General; and Brian M. Ewald, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural History

On August 5, 2010, Defendant pled guilty to a reduced charge of facilitation of sale of a Schedule II controlled substance within a drug-free school zone and, pursuant to a plea agreement, was sentenced to serve ten years on unsupervised probation.

*Probation Revocation Proceedings*

A probation revocation warrant alleging that Defendant had violated the terms of probation by obtaining new charges and failing to report those charges to his probation

officer was issued on February 9, 2011. The minutes of the criminal court and an Amended Judgment show that the warrant was sustained. Defendant's probation was to be "restarted," and he was ordered to "comply with Centerstone."

A second probation revocation warrant was issued on May 20, 2011, but was retired at the request of the State.

A third probation revocation warrant alleging that Defendant had violated the terms of probation by obtaining new charges, failing to report those charges to his probation officer, and failing to provide verification of employment was issued on July 22, 2011. Pursuant to the October 13, 2011 minutes, the warrant was sustained; Defendant was ordered to serve one year in confinement followed by reinstatement of his probation, and the case was continued until July 25, 2012. The Amended Judgment provided that Defendant was "to serve" until July 26, 2012.

A fourth probation revocation warrant alleging that Defendant had violated the terms of probation by leaving the county without permission and by failing to pay fees was issued on September 12, 2012. Pursuant to the October 4, 2012 minutes and an Amended Judgment, the warrant was sustained, and Defendant was ordered confined until November 17, 2012 and then reinstated to probation.

On March 1, 2013, a fifth probation violation warrant alleging Defendant had violated the terms of his probation by failing to report a new charge and engaging in sexually harassing behavior was issued. Pursuant to July 31, 2013 minutes and an Amended Judgment, the warrant was sustained, and Defendant's probation was reinstated with GPS monitoring for the first thirty days.

On September 30, 2013, a sixth probation violation warrant alleging that Defendant had violated the terms of his probation by using illegal drugs was issued. Pursuant to the December 17, 2013 Agreed Order, the warrant was retired based on Defendant's agreeing to attend Park Center for four days per week until he completed the outpatient treatment program, Defendant's signing a probation release with Park Center, and Defendant's living with Larry Lyda.

On February 19, 2014, a seventh probation violation warrant alleging that Defendant had violated the terms of his probation by engaging in sexually harassing behavior towards the Supervising Case Manager of Corrections Corporation of America was issued. Defendant was previously housed in the Case Manager's unit. The Amended Judgment entered March 6, 2014, stated that Defendant was reinstated to probation based on "time served," and the case reset on the August 14, 2014 docket. The

March 6, 2014 minutes provided that Defendant was to have no contact with the Case Manager.

On July 22, 2015, the State filed a Petition for Violation of Defendant's Unsupervised Probation and Revocation of Suspension of Sentence ("the Petition"). According to paragraph 4 of the Petition, Defendant:

a. had been charged with simple possession of cocaine on April 10, 2014, and pled guilty to that offense on May 27, 2014;

b. had been charged with possession of drug paraphernalia on August 16, 2014, and pled guilty on August 18, 2014;

c. had been charged with violation of an order of protection (victim was Defendant's wife) on August 25, 2014, and was found guilty after a trial on September 3, 2014;

d. had been charged with violation of an order of protection (victim was Defendant's wife) on December 2, 2014, and the case was bound over to the grand jury following a preliminary hearing on December 15, 2014;

e. had been charged with violation of an order of protection (victim was Defendant's wife) on December 4, 2014, and the case was bound over to the grand jury following a preliminary hearing on December 15, 2014.

According to paragraph 5 of the Petition, an indictment was filed on May 15, 2015, charging Defendant in Case No. 2015-B-1114 with one count of aggravated stalking and six counts of violation of an order of protection. Pursuant to the December 16, 2015 minutes of the criminal court, following a hearing on the Petition, the trial court took the matter under advisement until January 6, 2015.

On February 24, 2016, the State filed a Second Petition for Violation of Defendant's Unsupervised Probation and Revocation of Suspension of Sentence ("Second Petition"). The Second Petition alleged that on February 21, 2016, a warrant was issued for Defendant's arrest for violation of an order of protection involving Defendant's mother-in-law.

The State filed an amended Second Petition on March 28, 2016, claiming that Defendant pleaded guilty on March 1, 2016, to violating an order of protection involving

Defendant's mother-in-law, and that on March 12, 2016, a warrant was issued charging Defendant with another violation of an order of protection involving Defendant's mother-in-law.

The State filed a second amended Second Petition on August 11, 2016, alleging that on July 18, 2016, a warrant was issued for Defendant's arrest based on a violation of an order of protection involving his daughter.

On August 26, 2016, Defendant filed a response to the State's petitions entitled "Notice of Filing" ("the Notice"). The Notice claimed that certain attached documents had been filed in "Case Nos. 2015-B-1114 and 2016-B-1074, both in Division II" of the Davidson County Criminal Court. One of the documents filed with the Notice was a July 26, 2016 letter from Chris Loftis, Forensic Services Coordinator at Middle Tennessee Mental Health Institute, addressed to Judge J. Randall Wyatt, Jr. ("Loftis letter"). The Loftis letter stated:

> After completion of the competency evaluation, the staff is of the opinion that [Defendant]'s condition is such that he is **not capable** of adequately assisting in his defense in a court of law. In making this determination, it was concluded that **he does not** understand the charges pending against him and the consequences which may follow, and **is not able** to advise counsel and participate in his own defense.[1]
>
> The staff are further of the opinion that [Defendant] does meet the standards of judicial commitment to a mental health institute pursuant to the provisions of T.C.A. § 33-7-301(b) and Title 33, Chapter 6, Part 5, Tenn. Code Ann.
>
> The staff recommends that [Defendant] be committed to MTMHI Civil Side. The staff of MTMH[I] is willing to assist with the judicial commitment procedures. Please notify us as to what action is desired. Enclosed you will find the commitment certifications.

Also filed with the Notice were two "Certificate[s] of Need for Involuntary Commitment under Title 33, Chapter 6, Part 5, Tennessee Code Annotated." The first certificate of need provided by Rena Hill, a licensed psychologist who examined Defendant on July 26, 2016, stated that "[Defendant] has a history of psychotic symptoms, aggressive behavior, and suicidal ideation along with a history of noncompliance with psychotropic medications while in jail. He requires further

---

[1] Emphasis in original.

hospitalization to prevent further deterioration of his mental condition and for the safety of himself and others." The second certificate of need provided by Rokeya S. Farooque, a physician who also examined Defendant on July 26, 2016, stated that Defendant "has been diagnosed with [s]chizophrenia. His mental condition [deteriorated] and [Defendant] was admitted for evaluation of his mental condition. [Defendant] was aggressive, inappropriate with affect, attitude, behaviors and psychotic, disorganized prior to admission. [Defendant] does not have any understanding about his charges." Dr. Farooque also noted that Defendant "has placed others in reasonable fear of violent behavior and serious physical harm to them[.]"

Following a hearing on December 7, 2016, the trial court took the matter under advisement. On February 8, 2017, the trial court granted the State's petition and entered an "Amended Judgment" placing Defendant's sentence into effect.[2]

Defendant did not file a notice of appeal from the February 8, 2017 judgment.

### *Motion to Alter or Amend Judgment*

On May 16, 2017, Defendant filed a motion to alter or amend his sentence pursuant to Tennessee Rule of Criminal Procedure 35. The trial court conducted a hearing on June 22, 2017.

### *Rule 35 Hearing*

Defendant was the only witness to testify at the hearing. He stated that he had been incarcerated in the Department of Correction since March 23, 2017. He claimed that his incarceration had caused him to realize that he needed "to be way more responsible with [his] actions and [his] lifestyle" and that his incarceration had helped him identify "exactly what [he] need[ed] to do in the community." He said that, during his incarceration, he had been compliant with the orders of his mental health provider and that he had "take[n his] medication and talk[ed] to [his] therapist once every day." He stated that he takes his prescribed medication, Selexa, once a day and now realizes that he needs it. He stated that his probation was revoked "because [of] the lifestyle" that he was

---

[2] Defendant stated in his brief that the trial court delayed its ruling on the probation violation "until the matters in Case Nos. 2015-B-1114 and 2016-B-1074 were resolved." Defendant filed as a supplement to the record in this case a copy of the December 7, 2016 judgment of conviction for aggravated stalking in Count 1 of Case Number 2015-B-1114, and a copy of the December 7, 2016 judgments of conviction for violation of orders of protection in Count 1 and Count 2 of Case No. 2016-B-1074. These judgments were entered in Division II of the Criminal Court of Davidson County and were signed by Judge J. Randall Wyatt. The judgments show that Defendant pled guilty and received an effective sentence of six years as a career offender.

living with his spouse. He claimed he no longer desired to be around his wife and that he had filed for divorce. He claimed that he could live with his aunt and that he could comply with the terms of extensive probation if released.

At the conclusion of the hearing, the trial court stated:

> I'm going to respectfully deny the motion. It does not fall within the limited relief provided for under Rule 35, basically which is some kind of extraordinary type circumstances, that in the interest of justice would require the Court to reconsider the previous sentence imposed. And in this case that was on February the 8th. What I heard today is exactly what I've heard for years as it relates to Mr. Booker.
>
> Had they just discovered when they sent him out to the penitentiary about his mental health illness, that might be something worth considering in the interest of justice. He's had his mental health issue throughout this entire period of time. We have placed him in at least three different housing units to address specifically his mental health issues, at least three. The fact that he is compliant with medications now suggest that the penitentiary is where he needs to be because it is so structured that he can't just walk away from it anymore.
>
> But [the] only thing I've heard is stuff you would hear for a suspended sentence and that's not what we're here for. So I'm sorry that it's gotten to the point that it's gotten, I recognize that he is not necessarily a violent offender, but he is a constant offender. And sometimes even non-violent constant persistent offenders have to pay the consequences. Albeit not necessarily the ones they choose.

Pursuant to the June 22, 2017 criminal court minutes, the trial court denied the motion to alter or amend. The record does not contain an Amended Judgment.

On July 19, 2017, Defendant filed a notice of appeal "from the final judgment entered in this action on the 22nd day of June, 2017."

**Analysis**

Based on the notice of appeal, Defendant appealed from the trial court's order denying Defendant's motion to alter or amend. However in his brief, Defendant raised only one issue−that the trial court "erred in placing . . . Defendant's sentence into effect following a probation violation hearing given the evidence before that court of . . .

- 6 -

Defendant's mental illness."[3] The "Amended Judgment" placing the sentence into effect was entered February 8, 2017, not June 22, 2017. The February 8, 2017 Amended Judgment became final more than four months before Defendant filed the notice of appeal in this case. Accordingly, our review will be limited to the trial court's order denying Defendant's Rule 35 motion.

The State argues that the trial court did not err in denying Defendant's Rule 35 motion. We agree with the State.

*Tennessee Rule of Criminal Procedure 35*

Rule 35 of the Tennessee Rules of Criminal Procedure provides, as follows:

(a) Timing of Motion. The trial court may reduce a sentence upon motion filed within 120 days after the date the sentence is imposed or probation is revoked. No extensions shall be allowed on the time limitation. No other actions toll the running of this time limitation.

(b) Limits of Sentence Modification. The court may reduce a sentence only to one the court could have originally imposed.

(c) Hearing Unnecessary. The trial court may deny a motion for reduction of sentence under this rule without a hearing.

(d) Appeal. The defendant may appeal the denial of a motion for reduction of sentence but shall not be entitled to release on bond unless already under bond. If the court modifies the sentence, the state may appeal as otherwise provided by law.

Tenn. R. Crim. P. 35. According to the Advisory Commission Comments to Rule 35, "[t]he intent of this rule is to allow modification only in circumstances where an alteration of the sentence may be proper in the interests of justice." Tenn. R. Crim. P. 35, Advisory Comm'n Cmts.

---

[3] In his brief, Defendant argues that the trial court erred in revoking Defendant's probation because the trial court failed to determine whether Defendant's guilty pleas in other cases in other courts were entered "knowingly and voluntarily." To whatever extent, if any, the facts on which the decision to revoke Defendant's probation was based may be relevant to the motion to alter or amend, we note that no transcript of any probation revocation hearing was included in the record, and no proof concerning what led to the revocation of probation was presented at the June 22, 2017 hearing.

This court reviews a trial court's denial of a Rule 35 motion under an abuse of discretion standard. *State v. Ruiz*, 204 S.W.3d 772, 778 (Tenn. 2006); *State v. Edenfield*, 299 S.W.3d 344, 346 (Tenn. Crim. App. 2009). "[A]n appellate court should find that a trial court has abused its discretion only when the trial court has applied an incorrect legal standard, or has reached a decision which is illogical or unreasonable and causes an injustice to the party complaining." *Ruiz*, 204 S.W.3d at 778 (citing *Howell v. State*, 185 S.W.3d 319, 337 (Tenn. 2006)).

Here, the trial court specifically noted that the fact that Defendant "[wa]s compliant with medications now suggest that the penitentiary is where he needs to be because it is so structured that he can't just walk away from it anymore." That finding does not appear illogical or unreasonable based on the repeated unsuccessful efforts by the trial court to provide an alternative sentence with which Defendant could or would comply. The trial court applied the correct legal standard. The trial court did not abuse its discretion in denying the motion to alter or amend Defendant's sentence.

## Conclusion

For the aforementioned reasons, the judgment of the trial court is affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE