IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 24, 2020

## STATE OF TENNESSEE v. CHRISTOPHER ALLEN SMITH

**Appeal from the Criminal Court for Hamilton County**
Nos. 285655, 292165        Don W. Poole, Judge

FILED

APR 1 5 2020

Clerk of the Appellate Courts
Rec'd By _RSRoyal_

No. E2019-01345-CCA-R3-CD

Defendant, Christopher Allen Smith, filed a Rule 35 Motion for Modification of Sentence. The trial court held a bifurcated hearing where it denied Defendant's Rule 35 motion and revoked Defendant's probation, ordering his two eight-year consecutive sentences into execution. Defendant now appeals the trial court's denial of his Rule 35 Motion for Modification of Sentence. After a thorough review of the record and applicable case law and discerning no error, the judgments of the trial court are affirmed.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which John Everett Williams, P.J., THOMAS T. WOODALL, and J., joined.

Melody Shakari, Chattanooga, Tennessee (on appeal); and Erinn O'Leary, Assistant Public Defender, Chattanooga, Tennessee (at hearing), for the appellant, Christopher Allen Smith.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Senior Assistant Attorney General; Neal Pinkston, District Attorney General; and Kate Lavery, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### Procedural History

On March 16, 2014, Defendant pled guilty to one count of distributing methamphetamine in case 285655 and one count of fraudulent use of a credit card in case 285919. The trial court sentenced Defendant in accordance with the plea agreement to

eight years of supervised probation and ordered him to complete a Council for Alcohol and Drug Abuse Services ("CADAS") assessment.

On July 15, 2014, Defendant was indicted for vehicular assault, reckless aggravated assault, reckless endangerment, driving left of center, driving on a revoked license, financial responsibility violation, seat belt violation, and driving under the influence (DUI). On August 12, 2014, a probation violation warrant was issued based upon (1) Defendant's new arrest in the July 15, 2014 case, (2) Defendant's failure to keep his appointment with his probation officer, (3) Defendant's testing positive for marijuana, and (4) Defendant's failure to pay his restitution and probation fees.

On February 5, 2015, Defendant conceded the probation violation, and the court reinstated his probation, adding three days of community service. The same day, Defendant pled to one count of vehicular assault and one count of DUI in case 292165. The trial court sentenced Defendant pursuant to the plea agreement to eight years to serve in the Tennessee Department of Correction, suspended after eleven months and twenty-nine days' incarceration and one year in the Transformation Project drug rehabilitation program, to be served consecutively to his sentence in case 285655.

On July 15, 2015, the trial court issued a capias for the arrest of Defendant for failure to perform the three days of community service. On August 28, 2015, the trial court entered an order to allow Defendant until November 30, 2015, to perform three days of community service.

In November 2015, Transformation Project notified the trial court that Defendant failed four of his six drug screenings, that Defendant failed to attend meetings, and that Defendant failed to make his daily calls to his life coach. On November 30, 2015, the State notified the trial court that Defendant failed to comply with the community service provision of his sentence. On December 3, 2015, the trial court issued a capias for Defendant's arrest for failure to comply with conditions of his probation and ordered Defendant held without bond.

While it was unclear from the record, it appears that Defendant was placed back on probation. On July 22, 2016, the Public Defender was appointed to represent Defendant. Another capias issued in August of 2016 and Defendant was ordered to be held without bond. Defendant was rearrested in December of 2016.

On January 12, 2017, Defendant waived his right to a probation revocation hearing and conceded a probation violation. The trial court ordered Defendant's sentences in case 285655 and 292165 into execution and furloughed him to the Hamilton County Drug Court ("HCDC") program in case 292165. The next day, Defendant filed a pro se Rule 35 motion for modification of his sentence in case 292165. On February 6, 2017,

2

the trial court filed an order furloughing Defendant to HCDC in cases 285655, 285919, and 292165.

On April 13, 2017, the trial court filed a Notice of Violation and Removal from Hamilton County Drug Court Program for "absconding from CADAS and failing to maintain contact with HCDC." The trial court issued a violation warrant, and Defendant was arrested on November 3, 2017. Counsel was appointed to represent Defendant.

On December 5, 2017, Defendant waived his right to a probation revocation hearing, and the trial court reinstated Defendant to the HCDC program. That same day, Defendant again filed a pro se Rule 35 Motion for Modification of Sentence.

After receiving notice from HCDC of program violations, including absconding a second time, and a request to remove Defendant from the program, the trial court issued a violation warrant on April 25, 2018. Defendant was arrested on May 18, 2018, and the trial court ordered Defendant removed from the HCDC program on June 25, 2018, and transferred Defendant's cases to the criminal court "to show cause why he should not serve his sentences."

### Hearing

On May 16, 2019, the trial court held a hearing. Dr. Elaine Kelly testified that she worked with the HCDC program. She said that Defendant entered the HCDC program through a furlough as a part of his probation revocation and that she first met Defendant in 2016 when she performed a high risk assessment. In April of 2017, Defendant absconded from the HCDC program. Dr. Kelly stated that, when Defendant was arrested again in November of 2017, she "wanted him back" in the program so that Defendant would have "greater chances of long term success." She said that Defendant returned to the HCDC program with GPS monitoring. Dr. Kelly stated that Defendant used methamphetamine four times in March and April of 2018. He also left Hamilton County against the rules of the HCDC. Dr. Kelly testified that Defendant was scheduled to speak with the drug court on April 25, 2018, but that he absconded and did not contact the HCDC.

On cross-examination, Dr. Kelly testified that, whenever Defendant had periods without drug use, she considered that "progress." She stated that, after Defendant's second absconding, HCDC did not request that Defendant return because "future behavior is past behavior."

The trial court continued Defendant's hearing to June 27, 2019. On that date, Defendant testified that he had been in custody more than a year at the time of the hearing and that, prior to being in custody, he had participated in the HCDC program. He said that the first time he was in HCDC, he stayed approximately three months.

3

Defendant stated that he "got off [his] meds" for bipolar, schizophrenia, and depression, so he "relapsed" and was rearrested. He stated that, when he relapsed and began "self-medicating," he used marijuana and "crystal meth." Defendant said that he considered mental health court as an option after his relapse but that they "did not accept [him]." Defendant testified that, while in custody, he has received his medications.

Defendant testified that he recently investigated House of Refuge for treatment. He said, "I was in [the House of Refuge program] for about two, two and a half months in the program and it's a program I should have been in in the beginning." He stated that he participated in the House of Refuge program while he was in custody and that he wanted to continue with the program after his release. Defendant said that House of Refuge would "be different" because "[i]t's a Christian faith based program and they have job placement" and because he felt "comfortable there." Defendant stated that drugs were available in jail but that he had "no desire" to use them and was "done this time." He said that he recently connected with his family again and believed that he was "worth saving."

Defendant stated that the medications provided by HCDC for his mental health issues gave him "anxiety real bad" and "insomnia real bad and the jitters" and that those medications did not work like the ones he was on now. He said that his current combination of medications would help him maintain his sobriety.

Jonathan Bernard Johnson testified that he was the court liaison with House of Refuge. He said that House of Refuge was "a twelve month faith based program that provides housing, transportation, [and] help[s] guys find jobs and back into society." Mr. Johnson said that House of Refuge had three houses with different levels of supervision. He stated that House of Refuge conducts random drug tests and provides transportation to participants to and from their places of employment. He said the participants turn in their employment checks and are given an allowance so that when they complete the program, they have some money saved to purchase a car or find a place to live.

Mr. Johnson stated that he assessed Defendant and accepted him into the program, should the trial court permit it. He said that Defendant participated regularly in the House of Refuge program while he was in custody.

In regards to the Rule 35 motion, the trial court accredited the testimony of Dr. Kelly regarding Defendant's failure to comply with the HCDC program and his absconding twice. The trial court stated that it "considered the medical records from Erlanger Hospital [and Defendant's] testimony that he had been diagnosed with mental health issues." Continuing, the court stated:

> I find . . . very clearly [that Defendant] pled guilty with a sentence to
> be served in the penitentiary but was furloughed to drug court to comply

4

with drug court. I find very clearly that no exceptional circumstances exist, no unforeseen post-sentencing developments have occurred. The defendants in these issues when they are furloughed to something like drug court, they have to show that.

What [Defendant] has shown through very able counsel today is that he is trying to get into another program. Many, many programs have been tried in the past and [Defendant] sadly has not been able to comply with those programs.

The trial court found that "no exceptional circumstances exist" and "[n]o unforeseen post-sentencing developments have occurred" to warrant a reduction of Defendant's sentence and denied Defendant's motion.

The trial court reviewed Defendant's original sentences of probation in cases 285655 and 292165 and noted that Defendant had violated the conditions of his probation "several times." The trial court found "that [Defendant] violated the conditions of that drug court program clearly by the preponderance of the evidence." In its June 27, 2019 written probation revocation order, the trial court ordered Defendant's sentences into execution.

Defendant timely appealed the trial court's denial of his Rule 35 Motion for Modification of Sentence.

## Analysis

Defendant argues that the trial court abused its discretion when it denied his Rule 35 Motion for Reduction of Sentence. Defendant also contends that "there were conflicts in approach and disposition of the case, and the confusion disadvantaged [him] unfairly" because the trial court ruled on Defendant's Rule 35 motion and also found that Defendant had violated his probation in the same hearing.

The State responds that the trial court did not abuse its discretion when it denied the Rule 35 motion. It also asserts that the trial court's hearing was proper.

### Rule 35 Motion

Rule 35 of the Tennessee Rules of Criminal Procedure provides, as follows:

(a) Timing of Motion. The trial court may reduce a sentence upon motion filed within 120 days after the date the sentence is imposed or probation is revoked. No extensions shall be allowed on the time limitation. No other actions toll the running of this time limitation.

(b) Limits of Sentence Modification. The court may reduce a sentence only to one the court could have originally imposed.

(c) Hearing Unnecessary. The trial court may deny a motion for reduction of sentence under this rule without a hearing.

(d) Appeal. The defendant may appeal the denial of a motion for reduction of sentence but shall not be entitled to release on bond unless already under bond. If the court modifies the sentence, the state may appeal as otherwise provided by law.

Tenn. R. Crim. P. 35.

According to the Advisory Commission Comments to Rule 35, "[t]he intent of this rule is to allow modification only in circumstances where an alteration of the sentence may be proper in the interests of justice." Tenn. R. Crim. P. 35, Advisory Comm'n Cmts.

This court reviews a trial court's denial of a Rule 35 motion under an abuse of discretion standard. *State v. Ruiz*, 204 S.W.3d 772, 778 (Tenn. 2006); *State v. Edenfield*, 299 S.W.3d 344, 346 (Tenn. Crim. App. 2009); *State v. James Hall*, No. M2018-00096-CCA-R3-CD, 2019 WL 451368, at *1 (Tenn. Crim. App. Feb. 5, 2019), *no perm. app. filed*. "[A]n appellate court should find that a trial court has abused its discretion only when the trial court has applied an incorrect legal standard, or has reached a decision which is illogical or unreasonable and causes an injustice to the party complaining." *Ruiz*, 204 S.W.3d at 778 (citing *Howell v. State*, 185 S.W.3d 319, 337 (Tenn. 2006)).

When a defendant has entered a plea agreement with a specific, negotiated sentence, that sentence may only be modified pursuant to Rule 35(b) "where unforeseen, post-sentencing developments would permit modification of a sentence in the interest of justice." *James Hall*, 2019 WL 451368, at *2 (quoting *State v. McDonald*, 893 S.W.2d 945, 947 (Tenn. Crim. App. 1994)); *see State v. Patterson*, 564 S.W.3d 423, 434 (Tenn. 2018) ("[A] defendant is required to provide such information . . . if the defendant's Rule 35 motion seeks reduction of a specific sentence imposed in exchange for a guilty plea. For Rule 35 motions of this type, the *McDonald* standard remains applicable and appropriate.").

Here, both of Defendant's pleas were specific, negotiated sentences, so his sentences may only be modified pursuant to Rule 35(b) "where unforeseen, post-sentencing developments would permit modification of a sentence in the interest of justice." *James Hall*, 2019 WL 451368, at *2 (quoting *McDonald*, 893 S.W.2d at 947). While Defendant claims that he has found a new program which he believes will help him, "[a] defendant's claim that he would seek intensive rehabilitation treatment if released . . . is not an 'unforeseen, post-sentencing' development permitting modification

6

of the defendant's sentence in the interest of justice." *State v. Russell Leaks*, No. W2013-01136-CCA-R3-CO, 2014 WL 10316777, at *2 (Tenn. Crim. App. May 15, 2014). Because Defendant failed to establish "unforeseen, post-sentencing developments" which "would permit modification of a sentence in the interest of justice," the trial court did not abuse its discretion in denying Defendant's motion. *McDonald*, 893 S.W.2d at 947.

## Nature of the Hearing

Defendant claims that he understood that the purpose of the May 16, 2019 hearing was for the trial court to hear proof concerning his Rule 35 motion and not for the court to hear proof concerning his violation of probation. He asserts that, because the trial court treated the hearing as both a Rule 35 hearing and a probation revocation hearing, he did not have proper notice to address the probation revocation standard. However, Defendant knew that he had been removed from the HCDC program on June 25, 2018, and that his cases had been transferred to the criminal court "to show cause why he should not serve his sentences."

We also note that Defendant did not appeal the trial court's order revoking his probation;[1] thus, if Defendant is now somehow claiming the trial court improperly revoked his probation without notice, that issue was not raised in the notice of appeal. Tenn. R. App. P. 3(f). ("The Notice of Appeal . . . shall designate the judgment from which relief is sought, and shall name the court to which the appeal is taken."). Our review "generally will extend only to those issues presented for review." Tenn. R. App. P. 13 (b). We will not extend our review to the issue concerning the trial court's revocation of Defendant's probation.

The State responds that Defendant filed a Rule 35 motion and the trial court held a Rule 35 hearing in conjunction with the probation revocation hearing. Thus, the State argues, the trial court did not err. We agree with the State.

Defendant is not entitled to relief.

## **Conclusion**

For the foregoing reasons, the judgments of the criminal court are affirmed.

ROBERT L. HOLLOWAY, JR., JUDGE

---

[1] The contents of the Notice of Appeal stated:
Notice is hereby given that [Defendant], the above-named appellant, hereby appeals as of right pursuant to Rule 3 of the Rules of Appellate Procedure, to the Court of Criminal Appeals in Knoxville from the final judgment in this action on the 27th day of June, 2019 following the denial of his Rule 35 Motion for Reduction of Sentence.